CITY COUNCIL OF AGAWAM *vs.* ENERGY FACILITIES SITING
BOARD & another[1] (and three consolidated cases[2]).

Suffolk. September 4, 2002. - October 21, 2002.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Administrative Law,* Judicial review, Substantial evidence, Agency's interpreta-
tion of statute. *Energy Facilities Siting Board. Oil and Gas. License.
Public Utilities,* Electric company.

The Energy Facilities Siting Board had jurisdiction under G. L. c. 164,
§ 69K ½, to consider an application by the operator of a power plant for a
certificate of environmental impact and public interest, seeking approval of
the proposed storage of fuel oil on the grounds of the power plant, that had
the effect of overriding any conflicting burdens or limitations imposed by a
city council's denial of a local permit for storage of the oil, where the
board's interpretation of the statute so as to include within its reach the
denial of the permit was not incorrect; where the lack of a permit from the
State fire marshal, pursuant to G. L. c. 148, § 37, did not bar the board's
action; and where substantial evidence supported a hearing officer's finding
that the applicant's failure to list the § 37 permit in its initial petition to
the board was an insufficient basis to dismiss the application. [827-829]
On an application by the operator of a power plant for a certificate of
environmental impact and public interest, seeking approval of the proposed
storage of fuel oil on the grounds of the power plant, the hearing officer
correctly decided that consideration of the application would be limited to
issues connected to the storage, but not the combustion, of its reserve fuel
oil, where concerns by a local entity with regard to combustion were fully
and necessarily addressed in the underlying petition to construct proceed-
ing, in which the local entity chose not to participate. [829]
There was no merit to a city council's claim that a decision of the Energy
Facilities Siting Board, approving a license for a storage tank with a
volume of 500,000 gallons, impermissibly overrode an agreement by the
owner of the storage tank and the city's zoning board, which the city
council claimed limited the capacity to 465,000 gallons, where the board
correctly stated that its decision did nothing to interfere with the parties'
rights under that separate agreement. [829-830]
In a proceeding seeking the approval of the Energy Facilities Siting Board for

[1]Berkshire Power Development, Inc., intervener.

[2]Concerned Citizens and Businesses of Agawam *vs.* Energy Facilities Siting
Board & another. Theresa Lecrenski & another *vs.* Energy Facilities Siting
Board. Leo Vergnani *vs.* Energy Facilities Siting Board.

a certificate of environmental impact and public interest relating to a proposed storage of fuel oil on the grounds of a power plant, the board's plan modifying the oil tanker truck traffic in the vicinity of the power plant was supported by substantial evidence. [830-831]

CIVIL ACTIONS commenced in the Supreme Judicial Court for the county of Suffolk on September 23, 24, 28, and 30, 1999, respectively.

The cases were consolidated and reported by *Spina*, J.

*Robert J. Carnes* for Theresa Lecrenski & another.

*Michael J. Coyne* for City Council of Agawam.

*Adam Simms*, Assistant Attorney General (*Thomas A. Barnico*, Assistant Attorney General, with him) for Energy Facilities Siting Board.

*John A. DeTore* (*Rebecca Tepper* with him) for Berkshire Power Development, Inc.

CORDY, J. On September 3, 1999, the Energy Facilities Siting Board (board) granted a certificate of environmental impact and public interest to Berkshire Power Development, Inc. (Berkshire), approving the proposed storage of fuel oil on the grounds of its power plant in the city of Agawam. Four appeals were taken from that decision to a single justice of this court, who consolidated the appeals and reserved and reported the case to the full court. We now affirm the decision of the board.

1. *Background.* Pursuant to its statutory mission to "provide a reliable energy supply for the commonwealth with a minimum impact on the environment at the lowest possible cost," G. L. c. 164, § 69H, the board is charged with issuing construction permits for energy generation facilities. G. L. c. 164, § 69J ¼, inserted by St. 1997, c. 164, § 210. On June 20, 1995, Berkshire filed a petition to construct, requesting such a permit from the board.[3] The petition to construct stated that Berkshire planned to build an electric generating facility in Agawam that would be powered primarily by natural gas but that would contain, in reserve, a storage tank of fuel oil available as a power source to prevent disruptions in generation. The board

---

[3]At the time Berkshire's petition to construct was filed, the relevant section was G. L. c. 164, § 69J, as appearing in St. 1992, c. 141, § 15.

held two public hearings and thirteen days of evidentiary hearings regarding the petition, examining the environmental effects, the energy benefits, and the local impacts of the project. Prior to the evidentiary hearings, the board's hearing officer granted several petitions to intervene and petitions to participate as interested persons. These petitions were filed by groups ranging from energy companies to environmental organizations to concerned citizens. None of the plaintiffs before this court intervened or petitioned to intervene in those proceedings. On June 19, 1996, the board issued its final decision approving the petition to construct the generating facility. As part of its approval, the board noted that it expected Berkshire to abide by its representation to the board that fuel oil burning would not exceed one hundred hours in most years.[4] It also directed Berkshire to work with the city to develop a plan to minimize the impact of traffic to and from the facility.

After the board had issued the construction permit, Berkshire and the zoning board of appeals of Agawam (zoning board) fell into a dispute over certain local zoning restrictions. The dispute was resolved when the two parties entered into a settlement agreement (agreement), in which Berkshire agreed to modifications in its fuel storage and delivery plans, including reducing the capacity of the oil storage tank by fifty per cent.[5] The board approved the agreement on December 22, 1997.

In order to operate the facility, Berkshire was required by law to obtain various additional permits, including an oil storage license from the city pursuant to G. L. c. 148, § 13 (oil storage

---

[4]Although the Energy Facilities Siting Board (board) indicated that it expected Berkshire Power Development, Inc. (Berkshire), not to burn fuel oil for more than one hundred hours in most years, it approved Berkshire's request that, "when necessary," it be allowed to burn oil for up to 720 hours in a year.

[5]It was later established at the public hearings regarding Berkshire's application for a certificate that Berkshire and the city council of Agawam disagreed on the effect of the fifty per cent reduction. Berkshire claimed that its original proposal included a one million gallon tank with an actual capacity of 970,000 gallons, and that its reduced tank — a 500,000 gallon tank with a capacity of 475,000 gallons of oil — met the fifty per cent reduction requirement. The city council, on the other hand, asserted that the original tank was to have a capacity of only 930,000 gallons, and thus that the reduced-size tank would be 465,000 gallons, putting the 475,000 gallon tank in violation of the settlement agreement (agreement).

license),[6] and a storage tank permit from the State fire marshal, pursuant to G. L. c. 148, § 37 (§ 37 permit). On October 5, 1998, the city council rejected Berkshire's application for an oil storage license by an eight-to-three vote.

Under the provisions of G. L. c. 164, §§ 69K ½-69O ½, a prospective operator of an electric generating facility can apply to the board for a certificate of environmental impact and public interest that has the effect of overriding any conflicting burdens or limitations imposed by a State or local agency's permit. The board has jurisdiction to hear a petition for a certificate only if the applicant meets one of the statutory requirements established by § 69K ½. On October 23, 1998, Berkshire filed an initial petition with the board requesting that it accept Berkshire's application for a certificate to override the city council's rejection of its oil storage license application. Berkshire argued that it met three of the jurisdictional bases set out in § 69K ½, namely: (1) that the city council's denial of a permit created "inconsistencies among resource use permits" under § 69K ½ (iii); (2) that the denial had been based on a "nonregulatory issue or condition" establishing jurisdiction under § 69K ½ (iv); and (3) that the denial had "imposed a burdensome condition or limitation" on a license or permit that substantially affected the board's effort to execute its legislative mandate to ensure a reliable energy supply in the Commonwealth. G. L. c. 164, § 69K ½, second par.

The board consolidated Berkshire's initial petition with its subsequent application for a certificate and scheduled public hearings on the matter.[7] On March 26, 1999, it granted

---

[6]General Laws c. 148, § 13, requires that any structure used for the "keeping, storage, manufacture or sale" of explosive or inflammable materials be licensed by the local licensing authority, which in Agawam is the city council.

[7]The board's regulations regarding the issuance of certificates divide the certificate application process into two parts: an initial petition, 980 Code Mass. Regs. § 6.02 (1993); and an application, 980 Code Mass. Regs. § 6.03 (1993). When an energy generating company files an initial petition for a certificate, the board may either grant the initial petition (and proceed to consider the subsequent application) or consolidate that petition with the application and consider them both in a combined hearing. 980 Code Mass. Regs. § 6.02(4). The board in this case chose the latter course.

intervener status to the plaintiffs in this case.[8] On April 27, 1999, the first day of the hearings, the city council filed a motion to dismiss the application. It argued that Berkshire's failure to obtain (or even apply for) a § 37 permit from the State fire marshal divested the board of the power to issue a certificate, both because a § 37 permit was a prerequisite for a certificate and because Berkshire had stated falsely in its initial petition that it had obtained or applied for all necessary permits.[9]

On May 12, 1999, the board's hearing officer requested that all interested parties submit arguments to the board regarding whether jurisdiction existed under the first and third bases submitted by Berkshire in its initial petition, that is, whether the city council's denial of an oil storage license created an inconsistency among resource use permits or was a burdensome condition or limitation.[10] There is no record of the city council's submitting a response addressing these issues. On July 16, 1999, the hearing officer denied the city council's motion to dismiss, holding that neither Berkshire's failure to obtain a § 37 permit nor its failure to inform the board that it had not applied for one voided the board's jurisdiction over the application.

On September 3, 1999, the board issued its final decision. Addressing the initial petition first, the board ruled that it had jurisdiction to hear Berkshire's application on both inconsistencies among resource permit grounds and burdensome condition or limitation grounds. Moving to the merits of the application, the board noted that, although the city council had provided no reasons for its denial of the oil storage license application on October 5, 1998, the board had allowed the city council to submit documents generated after the decision identifying seventeen areas of concern as possible grounds for the denial of

---

[8]Intervener status was granted to the city council of Agawam; the Concerned Citizens and Businesses of Agawam; Michael DelNegro; Dean Harrison; Theresa Lecrenski and Five Star Transportation, Inc. (Five Star); and Leo Vergnani. Only the city council and Lecrenski and Five Star submitted briefs to this court on appeal. Their arguments are substantially similar. We refer primarily here to the city council, but where Lecrenski and Five Star make unique arguments, we mention them by name.

[9]Another intervener, Leo Vergnani, also filed a motion to dismiss on similar grounds.

[10]The board did not request arguments on the second purported ground for jurisdiction. In its final decision the board found that the ground was invalid.

the application. The board did not, however, find it appropriate to address every area of concern asserted by the city council. For example, three of the seventeen grounds dealt with the combustion, rather than the storage, of fuel oil at the facility. The board refused to address the issue of combustion for three reasons: because the oil storage license related only to the "keeping, storage, manufacture or sale" of explosive materials, not to their combustion; because the board had comprehensively addressed the issues surrounding the combustion of fuel oil in the original petition to construct proceeding; and because reconsideration of the combustion issue would have violated the due process rights of the parties to that prior proceeding. The board likewise declined to address a claim by the city council that Berkshire had violated a provision of the agreement it had reached with the zoning board in 1996, noting that the board did not have the authority to enforce conditions contained in local permits and that the zoning board, a party to the agreement, was not a party currently before it. Regarding the areas of concern that it did address, the board found that, despite the objections raised by the city council, Berkshire's oil storage plan was consistent with the law and with environmental, health, and safety concerns. It thus issued a certificate with two conditions: (1) that Berkshire obtain the required § 37 permit from the State fire marshal; and (2) that Berkshire modify its proposed delivery schedule further to accommodate traffic concerns.

Pursuant to G. L. c. 164, § 69P, and G. L. c. 25, § 5, the city council appealed from the board's decision to the county court. On reservation and report the following questions are before us: (1) whether, under § 69K ½, the board had jurisdiction to consider Berkshire's application for a certificate; (2) whether the board properly excluded concerns about the combustion of fuel oil from its consideration of the application; (3) whether the board's actions interfered with the operation of the agreement between Berkshire and the zoning board; and (4) whether the board's certificate condition modifying the traffic plan should be upheld. We address each question in turn.

2. *Standards of review.* The scope of our review of board decisions is limited to determining whether they conform to the Massachusetts and Federal Constitutions, the provisions of

§§ 69H-69O, and the board's rules and regulations; whether they are supported by substantial evidence in the record of the board's proceedings; and whether they were arbitrary, capricious, or an abuse of the Board's discretion. G. L. c. 164, § 69P.[11] See *Andover* v. *Energy Facilities Siting Bd.*, 435 Mass. 377, 378-379 (2001). The party appealing from a decision of the board bears the burden of showing that the decision is invalid. *Id.* at 379.

3. *The board's jurisdiction.* The city council contends that the board lacked jurisdiction to consider Berkshire's application because it did not meet any of the statutory predicates found in § 69K ½.[12] Specifically, it argues that § 69K ½ provides relief only from inconsistent or burdensome permits that have been issued by local authorities, not those that have been denied.[13] Denials of permits, it argues, are not reviewable by the board.

This court has often held that "the power to approve or disapprove a license carries with it the power to grant the license on some condition." *Mello* v. *License Comm'n of Revere*, 435 Mass. 532, 534 (2001), and cases cited. The case before us, however, involves a converse question: whether a statute creating certain consequences for the burdensome conditioning or limitation of a license includes in its scope the denial of that license. That question was decided in the affirmative by the board in its final decision. The board reasoned that the denial of a license application burdens, limits, or affects a license "at least as significantly" as does a conditional approval. While this is true as a matter of logic, it also finds support in our case law and in the board's own regulations.

[11]General Laws c. 164, § 69P, was not amended by St. 1997, c. 164, to reflect the insertion of § 69O ½ by St. 1997, c. 164, § 223.

[12]The board argues that the city council has waived this statutory argument because it was not raised before the board below. Because the questions whether § 69K ½ is jurisdictional, whether it can be waived, and whether it was waived in this case are unclear from the record and were not adequately presented to this court, we assume without deciding that § 69K ½ is jurisdictional and that the city council did not waive it.

[13]Section 69K ½ (iii) provides that the board shall consider petitions where the applicant believes "there are inconsistencies among resource use permits *issued* by such state or local agencies" (emphasis added). Section 69K ½, second par., provides that the board shall consider an application if it finds there to be a burdensome condition or limitation "on any license or permit."

In general, we have given agencies broad discretion to interpret statutes that they enforce, lending "substantial deference" to their interpretations. *Gateley's Case*, 415 Mass. 397, 399 (1993). This deference has included approving agency regulations that, while technically enlarging the meaning of a statute, are consistent with its intent. See *Villages Dev. Co.* v. *Secretary of the Executive Office of Envtl. Affairs*, 410 Mass. 100, 111 n.8 (1991) (basing interpretation of "permit" in environmental statute in part on agency regulation adding "deed" to its meaning). In this case, the General Court expressly authorized the board to establish regulations consistent with the "purposes" of the statute. G. L. c. 164, § 69H (1). The board specifically provided in those regulations that the denial of a permit was to be included within the reach of the statute. See 980 Code Mass. Regs. § 6.02(2)(e) (1993). Given the power granted to the board by the Legislature and the substantial deference that we afford to the board's decisions, we cannot say that the board's interpretation of § 69K ½ was incorrect. It is also consistent with the intent and purpose of the statute, which is in part to ensure that local boards do not use their power over licenses and permits to thwart the needs of the broader community for a reliable, affordable, and environmentally sound energy supply. In this context the denial of a permit stands on equal footing with burdensome conditions that effect the same result.

The city council also asserts that the board lacked jurisdiction because of Berkshire's failure to apply for a § 37 permit from the State fire marshal and its misrepresentation to the city council and to the board that it had. As to the first point, we find no requirement in the board's statutes or regulations that a § 37 permit be acquired before an initial petition is filed. Quite the opposite, the statute and regulations assume that at the time of the filing of the initial petition the applicant may not have obtained all necessary permits. See G. L. c. 164, § 69L ½ (4) (applicant must state "good faith effort" to obtain all permits and licenses); 980 Code Mass. Regs. § 6.03(3)(l) (1993) (requiring applicants list licenses and permits "expected to be required"). The lack of a § 37 permit is thus no bar to the

board's action.[14] As to the second point, the hearing officer found that Berkshire's failure to list the § 37 permit in its initial petition had been the result of a "mistake," rather than a deliberate misrepresentation.[15] Noting that nothing in the statute or regulations required a technically incomplete application to be dismissed, the hearing officer found the omission to be an insufficient basis to dismiss Berkshire's application. We conclude that the hearing officer's finding is supported by substantial evidence, and therefore we affirm the judgment of the board that it possessed jurisdiction to consider Berkshire's application for a certificate.

4. *The refusal to address fuel combustion.* The hearing officer ruled that consideration of Berkshire's application for a certificate would be limited to issues connected to the storage, but not the combustion, of its reserve fuel oil. The city council claims this decision to be erroneous. In its final decision, the board offered two principal rationales for this limitation: (1) that the board had addressed combustion concerns in its initial petition to construct hearings, and therefore to reexamine them would be to upset the settled expectations and due process rights of the parties to that hearing; and (2) that the purpose of the certificate proceeding was to review the city council's denial of an oil storage license, which itself permits only storage and not combustion. We agree with the board. The city council's claim that concerns regarding combustion have not been properly addressed is misplaced. Those concerns were fully and necessarily addressed in the underlying petition to construct proceeding, in which the city council (and Lecrenski and Five Star) chose not to participate. A certificate proceeding conducted pursuant to § 69K ½ is not a vehicle for the relitigation of issues that have already been fully and fairly determined.

5. *The effect of the board's ruling on the agreement.* The city council further claims that the board's final decision, in approv-

---

[14]We also note that because an oil storage license is a prerequisite to obtaining a § 37 permit, it was not possible for Berkshire to have obtained the § 37 permit before securing an oil storage license from the city council. See 520 Code Mass. Regs. § 12.01(5)(a) (1993).

[15]Berkshire claimed that it had mistakenly believed that the State fire marshal had delegated authority to issue § 37 permits to the chief of the Agawam fire department.

ing the license for a storage tank with a volume of 500,000 gallons, impermissibly overrides the agreement between Berkshire and the zoning board, which, the city council claims, limits the capacity to 465,000 gallons. In its final decision, the board expressly disavowed any effect of its ruling on the agreement, noting that "nothing in this Decision is intended to be inconsistent with or to otherwise interfere with the parties' rights and obligations under that Agreement." That agreement is a separately existing contract. The zoning board (or any other party that believes it has standing) is free to sue Berkshire claiming a violation of its terms. The board correctly stated that its decision did nothing to interfere with anyone's rights under that contract.

6. *The board's ruling on traffic*. Among the justifications for its denial of an oil storage license to Berkshire, the city council asserted concerns about the traffic of oil tankers coming in and out of the facility to replenish the oil storage tank. Although the board had previously addressed the issue of traffic and a traffic plan had been established, the board agreed to revisit the issue.[16] Berkshire had previously agreed that the delivery tankers would enter Agawam along a certain route and would restrict their

---

[16]Theresa Lecrenski and Five Star argue in their brief that the willingness of the board to reexamine the traffic issue proves that its decision not to revisit concerns surrounding the combustion of oil was arbitrary, because both issues had been addressed in the original petition to construct proceedings. In its analysis of the city council's asserted concerns, the board used a four-part test to determine which concerns it should recognize in deciding whether to issue a certificate: (1) whether the concern was one within the power of the board to address; (2) whether the concern had been adequately addressed in the underlying petition to construct proceeding; (3) whether the concern was one that could properly be considered by the city council in reviewing the application for an oil storage license; and (4) whether addressing the concern again would be consistent with the values of due process and administrative efficiency. The board concluded that, while it could have properly considered the subject of oil combustion, the fact that the petition to construct proceeding involved a comprehensive review of combustion, that the combustion issue was not one that the city council should have addressed in its licensing proceeding, and that addressing the issue again would have violated the due process rights of the participants in the completed, comprehensive review all militated against its reconsideration. Although the board did not state which factors caused it to consider the traffic issue again, it evidently concluded that the outcome of the four-factor test weighed in favor of the board's consideration of traffic concerns. As Lecrenski and Five Star provide no evidence that this test or its results were improper, we conclude that the

delivery times to 7 A.M. through 6 P.M. Monday through Saturday, taking special care during school pick-up and drop-off periods. As a condition on the certificate, the board further required that the tankers remain on the facility property while waiting to deliver their oil, and that deliveries be restricted to 9 A.M. through 2 P.M. on weekdays and 8:30 A.M. to 4:30 P.M. on Saturdays, with no deliveries on Sundays or holidays.

Lecrenski and Five Star argue that this decision was not supported by substantial evidence, and that the "inevitable" result of the board's decision will be a "parade" of oil tankers through the city. The board's decision was supported by substantial evidence. As Lecrecnski and Five Star concede, a "substantial portion" of the board's hearings addressed traffic concerns, and the board concluded that because the facility would usually burn oil for no more than one hundred hours a year, it would require no more than 187 tanker deliveries during the course of one year to keep it supplied. The board's opinion that this level of tanker traffic would not "significantly interfere" with Five Star's operations next door was not rebutted with any facts by Lecrenski or Five Star. We thus hold that the board's traffic conditions were supported by substantial evidence.

7. *Conclusion.* Finding no merit in the arguments advanced by the city council of Agawam, Theresa Lecrenski, and Five Star Transportation, Inc., that we have not addressed, and upholding the decisions of the board on those issues that we have addressed, we affirm the final decision of the board. Judgment shall enter in the county court affirming the decision of the Energy Facilities Siting Board.

*So ordered.*

board's decisions regarding which concerns to address were neither arbitrary, capricious, nor an abuse of its discretion.