JANICE HUNDLEY vs. JANICE MARSH, trustee.[1]

Suffolk. November 4, 2010. - March 7, 2011.

Present: IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Bankruptcy. Taxation,* Income tax, Marital deduction, Deduction from income, Estimated tax, Income tax returns. *Husband and Wife. Jurisdiction,* State law affecting Federal tax.

Discussion of State law applicable to the allocation, for purposes of bankruptcy, of spouses' ownership interests in a Federal joint tax refund. [80-83]

This court concluded that State law requires the allocation, for purposes of bankruptcy, of spouses' ownership interests in a Federal joint tax refund in the same manner provided by the so-called "separate filings rule" under G. L. c. 62D, i.e., by calculating what each spouse's tax liability would have been had the spouses filed separately, and what contributions each spouse has made to the total payments. [83-86]

This court concluded that in the allocation, for purposes of a bankruptcy proceeding, of spouses' ownership interests in a Federal joint tax refund, the nonearning spouse should be permitted to benefit from those tax credits to which she contributed, i.e., the child tax credit (to which a small portion of the refund was due), where the important role of the nonearning spouse as a homemaker in the care and raising of the couple's three children presumably constituted such a contribution. [86-87]

CERTIFICATION of questions of law to the Supreme Judicial Court by the United States Court of Appeals for the First Circuit.

*Kathleen R. Cruickshank* for the defendant.

*Todd B. Gordon* for the plaintiff.

*Carmen Milagros Ortiz,* United States Attorney, *John A. DiCicco,* Acting Assistant United States Attorney General, *Jonathan S. Cohen & Rachel I. Wollitzer,* of the District of Columbia, *& Teresa E. McLaughlin,* for the United States, amicus curiae, submitted a brief.

COWIN, J. This case arises from the bankruptcy proceeding of Kirk Hundley (husband). At issue is the ownership of a Federal tax refund originating from a joint income tax return filed by

[1]Of the bankruptcy estate of Kirk Hundley.

Janice Hundley (plaintiff) and her husband. Only the husband generated income in the relevant tax year. The trustee of the husband's bankruptcy estate, Janice Marsh (trustee), claimed the entire refund for the estate. The case is before us on certified questions of State law from the United States Court of Appeals for the First Circuit. See S.J.C. Rule 1:03, as amended, 382 Mass. 700 (1981). The questions follow.

> "1. Under Massachusetts law, does the tax refund constitute the property of Kirk Hundley alone or is it property in which Janice Hundley has a property interest?

> "2. If Janice Hundley has a property interest in the tax refund, what principles and potential facts are relevant to determining the extent of her interest?"

For the reasons discussed *infra*, Janice Hundley has a property interest in the joint tax refund if she would have been entitled to a refund had she and her husband filed separate tax returns. The extent of her property interest, if any, is determined by two factors: (a) her contributions to the refund in the form of payments or credits; and (b) what her tax liability would have been had the spouses filed separately. Consequently, the answer to the first certified question depends on the considerations set forth in the answer to the second question.[2]

1. *Background and prior proceedings.* The facts are not in dispute. In 2002, the plaintiff and her husband filed a joint income tax return with the Internal Revenue Service (IRS). The couple has three children. The plaintiff, a homemaker, did not work in 2002, and all the income on the 2002 return was attributable to the husband. The parties do not dispute that the husband's income was the source for all the withholdings and tax payments in 2002. In 2006, in order to carry back financial losses incurred in the 2004 tax year,[3] the plaintiff and her husband filed an amendment to their 2002 tax return. See 26 U.S.C. § 172(b) (2000). The amended return showed that the IRS owed the spouses a refund of approximately $94,910 (the joint

---

[2] We acknowledge the amicus brief of the United States.

[3] The losses were incurred by various businesses in which the husband was a partner.

refund). The bulk of the refund (92.2 per cent) derived from estimated tax payments, with the remainder derived from withholdings (6.4 per cent) and a child tax credit (1.4 per cent).

Shortly before submitting the amended joint tax return, the husband filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code, and the trustee was appointed to handle his case. In his bankruptcy filing, the husband disclosed a one-half interest in the anticipated refund.[4] The trustee wrote to the IRS requesting turnover of the joint refund to her. See 11 U.S.C. § 542(a) (2006). Her application to the IRS stated that one hundred per cent of the refund should be paid to the bankruptcy estate, because one hundred per cent of the taxable income was earned by the debtor husband. The IRS sent the trustee a check for $93,362,[5] made out to the husband, care of the trustee.

In 2009, the plaintiff commenced an adversary proceeding in the United States Bankruptcy Court for the District of Massachusetts, asserting that she was entitled to a fifty per cent share of the joint refund. After a hearing, the bankruptcy judge, relying on the decision in *In re Trickett*, 391 B.R. 657, 663 (Bankr. D. Mass. 2008) (*Trickett*), granted summary judgment to the plaintiff. The trustee appealed to the Bankruptcy Appellate Panel, and the plaintiff sought certification for direct appeal to the United States Court of Appeals for the First Circuit pursuant to 28 U.S.C. § 158(d)(2) (2006) and Fed. R. Bankr. P. 8001(f) (Thomson Reuters 2010). Direct appeal was granted. The United States Court of Appeals, observing that property interests in bankruptcy proceedings are a matter of State law, and finding no appropriate guidance in existing Massachusetts law, certified the aforementioned questions to this court.

2. *Legal framework.* Pursuant to the United States Bankruptcy Code, the estate of a debtor in bankruptcy includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). While Federal

---

[4]When the husband made this disclosure, he did not yet know the total refund amount. As a result, the husband underestimated his one-half interest to be $41,500.

[5]The record does not disclose why the refund amount differed from the estimate on the amended 2002 tax return.

law determines whether a particular interest constitutes property of the bankruptcy estate, State law creates and defines property interests. See *Butner* v. *United States*, 440 U.S. 48, 54-55 (1979). As a matter of Federal law, the right to a refund resulting from loss-carryback of prepetition losses constitutes property of the estate. See *Segal* v. *Rochelle*, 382 U.S. 375, 379-380 (1966); *Trickett, supra* at 659-660. Accordingly, any interest that the husband in this case may have in the joint refund is properly in the trustee's possession. The issue before us is the extent of the husband's interest as a matter of Massachusetts law. Because the refund resulted from a joint tax return filed by the plaintiff and her husband, each spouse arguably may have a right to claim ownership.

This court has not addressed previously the ownership of a joint tax refund in the context of bankruptcy. Four approaches have emerged in other courts. The majority approach ("the withholding rule") divides the joint refund in proportion to each spouse's tax withholdings during the relevant year. See, e.g., *In re Edwards*, 400 B.R. 345, 346-347 (D. Conn. 2008); *In re Gartman*, 372 B.R. 790, 795 (Bankr. D.S.C. 2007); *In re Lyall*, 191 B.R. 78, 85-86 (E.D. Va. 1996). See also *In re Carlson*, 394 B.R. 491, 494 (B.A.P. 8th Cir. 2008). The withholding rule is based on the principle that a tax refund is a return of excess payments and thus belongs to the taxpayer who made the payments. See *id.*

A second approach ("the income rule") divides the refund in proportion to each spouse's income during the tax year. See, e.g., *In re Verill*, 17 B.R. 652, 655 (Bankr. D. Md. 1982); *In re Kestner*, 9 B.R. 334, 336 n.3 (Bankr. E.D. Va. 1981).[6] A third and increasingly common approach ("the 50/50 rule") divides the refund equally between the spouses. This approach is based on several principles: marriage as a shared partnership, equitable division of marital assets during divorce, respect for contributions

---

[6]Because very few courts have followed the income rule, its details are vague; for example, no case clarifies whether the relevant income figure is gross income or taxable income. More recent cases have criticized the income rule, noting that spouses with equivalent incomes may make disparate contributions to the total tax payment. See *In re Lyall*, 191 B.R. 78, 85 (E.D. Va. 1996). Moreover, since the 1980s the income rule appears to have been largely if not entirely abandoned. See *In re Garbett*, 410 B.R. 280, 285 n.2 (Bankr. E.D. Tenn. 2009).

of homemaker spouses, and the fact that filing a joint tax return renders the spouses jointly and severally liable for the tax. See, e.g., *Trickett, supra* at 661-663; *In re Innis,* 331 B.R. 784, 787-788 (Bankr. C.D. Ill. 2005); *In re Barrow,* 306 B.R. 28, 30-31 (Bankr. W.D.N.Y. 2004). The 50/50 rule has the advantage of being "a bright-line rule that is easy to understand and apply." *Trickett, supra* at 663.

A final approach ("the separate filings rule") allocates the refund based on each spouse's hypothetical individual tax liability (hypothetical liability) had the spouses filed their tax returns as married parties filing separately. First, each spouse's contribution to "total payments" is determined.[7] Second, each spouse's share of the joint tax liability is calculated based on the ratio of that spouse's hypothetical liability to the sum of both spouses' hypothetical liabilities.[8] Each spouse owns that portion of the joint refund equal to the amount by which his or her contribution exceeds his or her share of the joint tax liability. See *In re Crowson,* 431 B.R. 484, 491-492 (B.A.P. 10th Cir. 2010) (*Crowson*). See also *In re Lyall, supra* at 86 n.3 (dictum).

In adopting the 50/50 rule in *Trickett,* the United States Bankruptcy Court for the District of Massachusetts found no Massachusetts law addressing directly a debtor's interest in a joint tax refund. *Trickett, supra* at 661. General Laws c. 62D, however, does address ownership of joint State income tax refunds in the context of the Commonwealth's program for "set-off debt collection." Pursuant to G. L. c. 62D, the Department of Revenue (department) may "intercept" State income tax refunds to satisfy unpaid State and local taxes, as well as debts owed to or enforced by other State agencies, such as unpaid child support or educational loans. See G. L. c. 62D, §§ 1, 3.[9] Pursuant to this program,

---

[7]"Total payments" includes not only out-of-pocket payments such as withholdings and estimated tax payments, but also tax credits. This is so because tax credits alone may generate refunds. See 26 U.S.C. § 6401(b)-(c) (2006); *In re Crowson,* 431 B.R. 484, 491 n.28, 494 n.41 (B.A.P. 10th Cir. 2010) (*Crowson*) (describing refundable tax credits).

[8]Employing a ratio accounts for the fact that joint filing often carries a tax benefit and, consequently, the sum of the spouses' hypothetical liabilities may exceed their actual liability as joint filers. See *In re Barrow,* 306 B.R. 28, 31 (Bankr. W.D.N.Y. 2004).

[9]If the amount owed by the debtor is greater than the refund, the entire refund may be intercepted or "set-off." G. L. c. 62D, § 5.

the department may intercept joint tax refunds even if only one spouse is a debtor. Where "a debt is not claimed against [the] nondebtor spouse," the nondebtor spouse may contest the interception of that portion of the refund and is afforded a hearing "to determine what portion of the refund is attributable to the income of the nondebtor spouse." G. L. c. 62D, § 5. See also G. L. c. 62D, § 6 (nondebtor spouse has burden of proving what portion of refund, if any, is attributable to his income).

As the agency charged with the enforcement of the set-off debt collection program, see G. L. c. 62D, § 11, the department's implementation of that program is relevant to the question before us. When a joint tax refund is set off to satisfy unpaid State taxes and a nondebtor spouse claims an interest in the set-off amount, the department requires the nondebtor spouse to provide information on each spouse's separate income, deductions, exemptions, credits, withholdings, and estimated tax payments. The department then calculates the nondebtor's portion of the refund "based on married filing separate status." Department of Revenue Form M-8379, Nondebtor Spouse Claim and Allocation for Refund Due. The department's approach parallels that of the IRS in implementing a comparable Federal program for interception of Federal tax refunds. See 26 U.S.C. § 6402(c)-(e) (2006); Rev. Rul. 80-7, 1980-1 C.B. 296; Instructions to IRS Form 8379, Injured Spouse Allocation.

3. *Discussion.* a. *The proper allocation method.* While the ownership of a joint tax refund in the context of bankruptcy proceedings is a matter of first impression for this court, the Legislature has provided some guidance in addressing the question. By stating that a nondebtor spouse is entitled to the portion of a joint State tax refund "attributable to his income," G. L. c. 62D demonstrates a legislative intent that joint refunds be divided according to the spouses' contributions, rather than in equal shares.

While that statutory allocation of ownership interests governs only in set-off debt collection, there is no reason to adopt a different judge-made allocation for the purpose of bankruptcy proceedings. The nondebtor's ownership share in both contexts determines what interests will and will not be protected from claims by a governmental creditor, and we see no reason why

those protections should be different in bankruptcy proceedings. Similarly, there is no reason why the ownership of the joint refund should differ when the refund originates from Federal, rather than State, tax payments. See *Butner* v. *United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding"). Accordingly, we disagree with the court in *Trickett*, which held that "Massachusetts law is not at odds with the 50/50 split approach." *Trickett, supra* at 662-663. We consider the 50/50 rule inconsistent with the proper approach in light of the language of G. L. c. 62D.

The plaintiff, in arguing for the 50/50 rule, relies on Massachusetts law that views marriage as a shared partnership and that divides marital assets equitably in the event of divorce. See G. L. c. 208, § 34; *Hay* v. *Cloutier*, 389 Mass. 248, 254 (1983). These arguments are insufficient to override the legislative directive embodied in G. L. c. 62D. As the trustee points out, our laws also preserve the independent property interests of spouses during marriage. See G. L. c. 209, § 1. In this Commonwealth, spouses who are not divorcing are not entitled to share in each other's property solely by virtue of the fact that the parties happen to be married and are cooperating to raise a family. The equity considerations underlying asset distribution at divorce do not drive the allocation of property interests in a bankruptcy proceeding. See *In re Gartman*, 372 B.R. 790, 794 (Bankr. D.S.C. 2007). Nor do we find persuasive the fact that filing a joint return imposes joint and several liability on the spouses. See 26 U.S.C. § 6013(d)(3) (2006). That is also the case for Massachusetts income tax returns, see G. L. c. 62C, § 6 (*a*), yet the Legislature nonetheless provided for proportional allocation of joint refunds in G. L. c. 62D.

Rejecting the 50/50 rule does not, of course, determine the appropriate allocation method. As noted, at least three alternative approaches exist, all of which are compatible with the language of G. L. c. 62D.[10] We consider first the withholding rule. Because the withholding rule is based on the premise that

---

[10]Although the set-off debt collection statute uses the term "attributable to

"you take out what you put in," *In re Edwards*, 400 B.R. 345, 346 (D. Conn. 2008), that rule assigns to the nondebtor spouse a portion of the refund proportional to the nondebtor spouse's withholdings and estimated tax payments.[11] The withholding rule, however, assumes falsely that refunds are the product solely of overpayments. In fact, as stated, refunds often derive partly from tax credits, such as the earned income credit, child tax credits, and education credits. See *In re Barrow*, 306 B.R. 28, 30-31 (Bankr. W.D.N.Y. 2004). These credits are unrelated to the withholdings and tax payments of the spouses, and may, in some cases, contribute significantly to the total refund (for example in families with low income, multiple children, and educational expenses).

The withholding rule offers no satisfactory method of accounting for tax credits. Ignoring the existence of credits in distributing the refund, as the trustee suggests implicitly here, produces a distorted picture of the refund's origin. Allocating them proportionally on the basis of payments unfairly gives the spouse who made more payments a greater ownership interest in credits that are unrelated to the payments made. See *Crowson, supra* at 490. The income rule, which allocates the refund according to each spouse's income, also is inaccurate and unfair. Credits are

income," to construe G. L. c. 62D as mandating adoption of the income rule would be to take too narrow a view of the statutory language. That language requires nothing more than an allocation that is proportional to spousal contributions. Moreover, in implementing the statute the Department of Revenue has not adopted a strictly income-based allocation method. "In general, we accord 'substantial deference' to an agency's interpretation of those statutes which it is charged with enforcing." *Providence & Worcester R.R. Co.* v. *Energy Facilities Siting Bd.*, 453 Mass. 135, 141 (2009), citing *City Council of Agawam* v. *Energy Facilities Siting Bd.*, 437 Mass. 821, 828 (2002).

[11]Prior cases adopting the withholding rule generally have not discussed estimated tax payments. Unlike withholdings, which are deducted directly from paychecks, estimated tax payments are not necessarily paid by the spouse generating the underlying income that gives rise to the tax liability. A wife could pay estimated tax payments, owed on income generated by the husband, out of the wife's own separate finances; alternatively, the spouses could make a joint estimated tax payment on income generated by only one spouse. Because prior cases have not addressed estimated tax payments, those cases generally fail to explain whether refund allocation is governed by whose funds were used for the payment, or by which spouse generated the underlying income. The question is not before us in this case because the husband made the estimated tax payments on his own income.

as unrelated to spousal incomes as they are to withholdings. Accordingly, we reject both the withholding and income rules.

We conclude that the separate filings rule provides the most appropriate method of allocating the spouses' interests in a joint tax refund. Unlike the withholding and income rules, the separate filings rule properly allocates a couple's tax credits by determining if each spouse is responsible for all, part, or none of a claimed credit. While this approach is more complex, "simplicity cannot come at the expense of the debtor's non-filing spouse."[12] *Crowson, supra* at 496. The separate filings rule has the further advantage of being consonant both with the principles of proportionality embodied in G. L. c. 62D and with allocation methods already employed by the department and the IRS.

As noted, the separate filings rule requires calculation of what each spouse's tax liability would have been had the spouses filed separately, and of what contributions each spouse has made to the total payments. In disputes over refund ownership in bankruptcy proceedings, both the trustee and the nondebtor spouse will have the opportunity to present evidence of calculations supporting their ownership claims. While certain components of these calculations, particularly the proper allocation of tax credits, may be complex and, to some degree, subjective, these are factual matters left to the bankruptcy court. We determine only that State law deems a joint tax refund to be allocable based on each spouse's hypothetical tax liability as married parties filing separately.

b. *The plaintiff's interest.* We turn to a determination, by application of the separate filings rule, of the plaintiff's property interest in the joint refund at issue here. In adopting that rule, as noted, we reject the plaintiff's claim that the refund should be divided equally, and that she has a one-half interest in it. We reject also the trustee's argument that the plaintiff has no interest in the refund simply because her husband generated the income and made all the withholdings and tax payments that contributed

---

[12]In cases in which a couple does not claim any credits, and their refund is due entirely to withholdings from income, the separate filings rule will produce the same result as the withholdings rule. In those cases, the withholding rule may be an appropriate allocation method. See *Crowson, supra* at 490 & n.19 (limiting to its facts a prior case applying withholding rule when entire refund was due to withholding).

to the refund. Instead, we must consider whether the plaintiff made contributions to the refund, and whether, had she filed a separate tax return, she would have had any tax liability. Her property interest will be equal to her contributions, less her hypothetical separate tax liability.

Because the plaintiff generated no income in 2002, we assume that her income tax liability would have been zero. Her property interest in the refund, therefore, is equal to any contributions she made to the refund amount. While the husband contributed the withholdings and tax payments that constitute the bulk of the refund in this case, a small portion of the refund (1.4 per cent) is due to a child tax credit. Each spouse, even a nonearning spouse, "should be permitted to benefit from those tax credits to which [s]he contributed." *Crowson, supra* at 496. The plaintiff's important role as a homemaker in the care and raising of the couple's three children presumably constitutes such a contribution. Accordingly, the plaintiff may be entitled to some or all of the 1.4 per cent of the refund that is due to the child tax credit. In further proceedings in this case, the trustee may offer evidence to rebut that presumption, and the plaintiff and the trustee may each offer evidence regarding what portion of that 1.4 per cent is property of the plaintiff.[13]

4. *Conclusion.* In response to the certified questions, we therefore answer that whether Janice Hundley has a property interest in the joint tax refund depends on whether she would have been entitled to a refund had she and her husband filed separate tax returns. The extent of her interest is determined by her contributions to the joint refund and her hypothetical individual tax liability. The Reporter of Decisions is directed to furnish attested copies of this opinion to the clerk of this court. The clerk will transmit one copy, under the seal of the court, to the clerk of the United States Court of Appeals for the First Circuit as the answer to the questions certified, and will also transmit a copy to each party.

---

[13]We note our disagreement with the method of apportioning a child tax credit adopted in the *Crowson* decision, where the court allocated the credit based on a ratio derived from the spouses' incomes. *Crowson, supra* at 494. As noted, child tax credits are unrelated to what each spouse contributes to total family income. Other methods of allocation exist. See *id.* at 494 n.43; Instructions to IRS Form 8379, Injured Spouse Allocation (allocating child tax credits to spouse claiming exemption for child).