NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JAMES J. GIBSON and LORI G.
GIBSON,

        Appellants,

v.

WELLS FARGO BANK, N.A., as
successor by merger to Wachovia Bank,

        Appellee.

Case No. 2D16-5632

Opinion filed July 13, 2018.

Appeal from the Circuit Court for
Hillsborough County; Robert A. Foster, Jr.,
Judge.

Jennifer E. Jones of McIntyre Thanasides
Bringgold Elliott Grimaldi & Guito, P.A.,
Tampa; and Shyamie Dixit and Robert L.
Vessel of the Dixit Law Firm, P.A., Tampa,
for Appellant Lori Gibson.

Amy J. Winarksy of Marcadis Singer, P.A.,
Tampa, for Appellant James J. Gibson.

Ryan W. Owen of Adams and Reese, LLP,
Sarasota, for Appellee.

LaROSE, Chief Judge.

        Dr. Lori and James Gibson appeal the final summary judgment entered in

favor of judgment creditor, Wells Fargo Bank, N.A, in proceedings supplementary. We

have jurisdiction.  See Fla. R. App. P. 9.030(b)(1)(A).  We must determine whether, under Florida law, a creditor may satisfy a debt incurred by one spouse by garnishing a federal tax refund issued in both spouses' names and deposited in their joint checking account.  Florida law compels us to conclude that the joint tax refund is tenancy by the entirety (TBE) property not subject to garnishment.  Thus, we reverse.

## Background

In December 2009, Wachovia Bank sued Mr. Gibson for breach of a promissory note that he, alone, executed in March 2008.  The parties stipulated to the entry of a final judgment in favor of Wachovia for over one million dollars.

Following entry of final judgment, the Gibsons filed amended joint federal tax returns for tax years 2003 through 2006, seeking retroactive reduction in their tax burden.  See American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, at § 1211, 123 Stat. 115 (2009) (amending section 172(b)(1)(H) of the Internal Revenue Code to extend the carryback period to up to five years for 2008 net operating losses incurred by an eligible small business).  Based upon these returns, the Internal Revenue Service issued two tax refund checks; one in June 2011 and the other in April 2014.  Each check was payable to both Mr. Gibson and his wife, Dr. Gibson.  The refund checks totaled over two million dollars.  The Gibsons deposited both checks into their joint account at SunTrust Bank.  The parties agree that the Gibsons held the SunTrust account as TBE property.

In October 2014, Wells Fargo Bank, as successor by merger to Wachovia, moved to garnish the SunTrust account.  Wells Fargo sought proceedings supplementary under section 56.29, Florida Statutes (2014), and moved to implead Dr.

Gibson as a party. Wells Fargo alleged that it could execute on the federal tax refunds in the account to satisfy Mr. Gibson's outstanding judgment.

The trial court granted Wells Fargo's motions for proceedings supplementary and impleader. Thereafter, Wells Fargo moved for summary judgment. The Gibsons opposed the motion and filed their own summary judgment motion, arguing that they held the joint federal tax refunds as TBE. They also maintained that the refunds related to tax years prior to execution of the 2008 promissory note.

The trial court granted Wells Fargo's motion and denied the Gibsons' motion. The trial court found that the refunds "were attributable solely to [Mr. Gibson]'s economic activities." Further, the trial court was persuaded by Wells Fargo's argument that, because the IRS has the ability to apportion tax refunds to each individual spouse, issuance of the joint tax refund checks did not establish TBE property. The trial court entered a final summary judgment providing that Wells Fargo could recover from Dr. and Mr. Gibson "jointly and severally and as tenants by the entireties, the sum of $1,310,491.78" from the SunTrust Account.

## Analysis

On appeal, the Gibsons argue that the joint tax refunds, issued in both of their names and deposited in their joint bank account, are TBE property. Therefore, Wells Fargo, a creditor to only Mr. Gibson, cannot reach those funds to satisfy his individual debt. Although they acknowledge that the IRS has statutory authority to attach TBE property in certain circumstances, the Gibsons contend that third-party creditors, such as Wells Fargo, lack such authority. The trial court, in their view, erred in ruling for Wells Fargo.

> A movant is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials as would be admissible in evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Estate of Githens ex rel. Seaman v. Bon Secours-Maria Manor Nursing Care Ctr., Inc., 928 So. 2d 1272, 1274 (Fla. 2d DCA 2006) (quoting Fla. R. Civ. P. 1.510(c)). The parties agree that there are no material facts in dispute. Thus, we review the trial court's entry of summary judgment as a pure question of law. Our review is de novo. See Shaw v. Tampa Elec. Co., 949 So. 2d 1066, 1069 (Fla. 2d DCA 2007) ("The general 'standard of review governing a trial court's ruling on a motion for summary judgment posing a pure question of law is de novo.' " (quoting Major League Baseball v. Morsani, 790 So. 2d 1071, 1074 (Fla. 2001))).

Finding its origins in paternalistic ideas of property ownership, see First Nat'l Bank of Leesburg v. Hector Supply Co., 254 So. 2d 777, 779 (Fla. 1971) ("The historic basis for the [TBE] was the assumed incapacity of married women to hold property individually."), TBE's theoretical underpinnings suit a contemporary ethos. Indeed, "the distinctive feature of a tenancy by the entireties, that husband and wife hold property as an indivisible unit, renders this form of ownership equally well-suited to the concept of modern-day marriage as a partnership between equals." See Beal Bank, SSB v. Almand & Assocs., 780 So. 2d 45, 52 n.7 (Fla. 2001).

In Beal Bank, the Florida Supreme Court answered the following rephrased certified question in the affirmative:

> In an action by the creditor of one spouse seeking to garnish a joint bank account titled in the name of both spouses, if the unities required to establish ownership as a tenancy by the entireties exist, should a presumption arise that shifts the

> burden to the creditor to prove that the subject account was not held as a tenancy by the entireties?

Id. at 48.  In so doing, the court eliminated any lingering distinctions between real property and personal property held jointly by wife and husband.  See Cacciatore v. Fisherman's Wharf Realty Ltd. P'ship, 821 So. 2d 1251, 1253 (Fla. 4th DCA 2002) ("[Beal Bank] indicated that the time had come to eliminate that disparity and to accord to personal property in general (not just bank accounts) the same presumption of tenancy by the entireties when jointly owned by husband and wife as that accorded real property jointly owned by husband and wife.").  And, the court adopted a presumption "shifting the burden to the creditor to prove by a preponderance of evidence that a tenancy by the entireties was not created."  Beal Bank, 780 So. 2d at 58-59 (footnote omitted).  Significantly, Beal Bank affirmed that "property held by husband and wife as tenants by the entireties belongs to neither spouse individually, but each spouse is seized of the whole."  Id. at 53.

The court spoke broadly, finding strong policy considerations supporting a tenancy-by-the-entireties presumption when "a married couple jointly owns personal property."  Id. at 57; see also In re Daniels, 309 B.R. 54, 59 (Bankr. M.D. Fla. 2004) ("[W]hile the court in Beal Bank explicitly addressed an issue involving only marital bank accounts, the court also discussed in detail ownership issues surrounding marital personal property in general and expressly concluded that strong policy reasons exist for extending the tenancy by the entireties presumption to jointly owned marital personal property, not just to financial accounts.").

Beal Bank noted that TBE property enjoys six unities:

(1) unity of possession (joint ownership and control);
(2) unity of interest (the interests in the account must be

identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously); (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names).

780 So. 2d at 52 (footnote omitted). The unity of marriage is the unique quality of TBE property. Id. ("Because of the sixth characteristic—unity of marriage—a tenancy by the entireties is a form of ownership unique to married couples."); In re Franzese, 383 B.R. 197, 201 (Bankr. M.D. Fla. 2008) ("Tenancy by the entireties, as defined by applicable Florida law, is a unique form of property ownership only married couples may enjoy.").

State law creates and defines property interests. Butner v. United States, 440 U.S. 48, 55 (1979). Federal tax law, on the other hand, "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." United States v. Nat'l Bank of Commerce, 472 U.S. 713, 722 (1985) (quoting United States v. Bess, 357 U.S. 51, 55 (1958)). Under Florida law, special protections assigned to TBE property which are not afforded to other forms of property ownership underscore the distinctiveness of TBE property. For example, and particularly relevant for us, "[f]unds owned by a husband and wife as tenants by the entireties are 'beyond the reach of a creditor of either one of the tenants. Such funds are immune from garnishment except where the debt was incurred by both spouses.' " Branch Banking & Tr. Co. v. Ark Dev./Oceanview, LLC, 150 So. 3d 817, 821 (Fla. 4th DCA 2014) (quoting Antuna v. Dawson, 459 So. 2d 1114, 1116-17 (Fla. 4th DCA 1984)).

> [I]f property is held as a joint tenancy with right of survivorship, a creditor of one of the joint tenants may attach the joint tenant's portion of the property to recover that joint tenant's individual debt. However, when property is held as a tenancy by the entireties, only the creditors of both the husband and wife, jointly, may attach the tenancy by the entireties property; the property is not divisible on behalf

> of one spouse alone, and therefore it cannot be reached to
> satisfy the obligation of only one spouse.

Beal Bank, 780 So. 2d at 53 (emphasis added) (citation omitted); accord In re

Benzaquen, 555 B.R. 63, 66 (Bankr. S.D. Fla. 2016) ("[P]roperty held as TBE can only

be attached by joint creditors of both a husband and wife." (citing Beal Bank, 780 So. 2d

at 45)).

The Gibsons filed their tax returns jointly as husband and wife. They

argue that "once the check was issued, both Dr. Gibson and her husband [possessed

the six unities of TBE property]." We agree. It is important, however, to focus on the

antecedent act of filing joint returns. We assess, initially, whether TBE status can attach

to the anticipated receipt of a tax refund.

The field of bankruptcy law provides the key. "While a debtor may not

obtain a refund until the tax year closes, the predicates for receiving the refund may

occur prior to filing the bankruptcy petition." In re Uttermohlen, 506 B.R. 142, 148

(Bankr. M.D. Fla. 2012) (citing In re Witko, 374 F.3d 1040, 1043 (11th Cir. 2004)).

"Thus, a debtor possesses 'an existing interest [in the refund] at the time of filing even

though his enjoyment of that interest was postponed.' " Id. (alteration in original)

(quoting In re Witko, 374 F.3d at 1043). Naturally, therefore, by filing jointly, the

Gibsons had an expectation of a refund that satisfied the requisite unities of TBE

property. See id. ("The Court finds that the Uttermohlens had an interest in the

prospective refund at the time of filing and the law presumes that they intended to

possess that interest as TBE. They evinced that intent by filing a joint tax refund

making them jointly and severally responsible for any tax liability, and received a refund

check in both their names."). And once the checks were issued, because either party

could have deposited them, the unity of survivorship was satisfied. Cf. § 735.302(1)(a), Fla. Stat. (2014) (providing for the disposition of a federal income tax refund by a surviving spouse).

We are not persuaded by Wells Fargo's efforts to draw the line between the issuance of the refund checks, in the first instance, and their subsequent deposits in the Gibsons' joint account. This temporal legerdemain is insufficient to undermine our determination that the refunds were TBE property. When TBE property is established, its subsequent transfer to another asset does not terminate the unities of title or possession. See Passalino v. Protective Grp. Sec., Inc., 886 So. 2d 295, 297 (Fla. 4th DCA 2004) ("Transferring the proceeds of the sale of entireties property to a trustee for the benefit of the husband and wife does not terminate the unities of title or possession, where the parties clearly intended their property to be held as a tenancy by the entireties by exercising beneficial ownership of the property and controlling the property's disposition."). The Gibsons possessed an interest in their prospective refunds as TBE property at the time they filed their amended joint returns. That interest continued intact following issuance of the checks and their deposits into their joint back account.[1]

Wells Fargo argued to the trial court that the tax code's treatment of refunds, and the IRS's statutory authority to impose tax liens, control any determination of whether the tax refunds are TBE property. See 26 U.S.C.§§ 6321 ("If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount

---

[1]As underscored by Florida law, "[a]ny deposit or account made in the name of two persons who are husband and wife shall be considered a tenancy by the entirety unless otherwise specified in writing." § 655.79(1), Fla. Stat. (2014). Our record is devoid of a writing specifying otherwise.

(including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."), 6402(a) (2012) ("In the case of any overpayment, the Secretary . . . may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall . . . refund any balance to such person."). Wells Fargo claimed that because the IRS may apportion tax refunds to each spouse, the joint tax refund checks issued to the Gibsons were not TBE property.

The argument is unavailing. Whatever rules apply to the IRS do not necessarily apply to a creditor such as Wells Fargo. "[W]e are, of course, not bound by the [Middle District]'s decisions on questions of Florida law." Liberty Am. Ins. Co. v. Kennedy, 890 So. 2d 539, 541 (Fla. 2d DCA 2005) (citing Int'l Ass'n of Bridgeworkers v. Blount Int'l, Ltd., 519 So. 2d 1009, 1012 (Fla. 2d DCA 1987), for the "holding that state courts, in construing and interpreting state law, are not bound by the decisions of federal courts"). However, we find Judge Covington's cogent analysis in Uttermohlen, which presents a similar factual scenario as that presented in our case, compelling.

Uttermohlen filed for bankruptcy protection. Uttermohlen, 506 B.R. at 144. He later amended his petition to claim a tax refund of over $10,000, issued to him and his wife jointly, as exempt property. Id. The bankruptcy trustee unsuccessfully objected to the exemption. Id. The district court affirmed the bankruptcy court's order on appeal. Id.; see also 28 U.S.C. § 158(a)(1) (2006) (conferring appellate jurisdiction upon district courts of a bankruptcy court's "final judgments, orders, and decrees").

Judge Covington began her analysis by noting that, under Beal Bank, policy considerations favored the presumption that personal property owned jointly by a married couple is TBE property. Uttermohlen, 506 B.R. at 146. She then discussed In re Sinnreich, 391 F.3d 1295 (11th Cir. 2004), and United States v. Craft, 535 U.S. 274 (2002), in a manner that undermines Wells Fargo's position:

> [In Sinnreich], a creditor sought to reach assets owned by the debtor and his non-filing spouse as TBE, applying the rationale of United States v. Craft, 535 U.S. 274, 122 S. Ct. 1414, 152 L.Ed.2d 437 (2002). In Craft, the Supreme Court held that because each spouse had certain individual rights in TBE property that fell within the meaning of property defined by the Internal Revenue Code, the IRS may attach a lien to TBE property. Id. at 282. In Sinnreich, the Eleventh Circuit declined to extend the holding in Craft to other creditors, finding that the IRS had 'unique powers' to attach a lien to TBE property. 391 F.3d at 1297. Otherwise, the TBE protection afforded by the Bankruptcy Code would be rendered superfluous. Id. at 1298.

Uttermohlen, 506 B.R. at 147; see also Sinnreich, 391 F.3d at 1298 ("Simply stated, the Craft Court announced the rule that the IRS's federal statutory powers to tax and attach liens to property trumped any state property rights afforded to a taxpayer who holds property by the entireties with her spouse. The Craft Court gave no indication that its holding could be extended beyond a tax collection context . . . . "). Judge Covington then observed that other courts, too, had found that federal law "create[d] a narrow exception allowing *only* the IRS to defeat the unity of interest that is presumed to exist under Beal Bank." Uttermohlen, 506 B.R. at 147 (quoting In re Newcomb, 483 B.R. 554, 558 (Bankr. M.D. Fla. 2012) (unpublished memorandum opinion)). Other creditors enjoy no such special status.

Some Florida bankruptcy court decisions are not in accord with Uttermohlen. See, e.g., In re Morine, 391 B.R. 480, 482 (Bankr. M.D. Fla. 2008)

("Because the refund is attributable solely to the Debtor's income and not to his non-debtor spouse, the interest in the refund check only belongs to the Debtor."); In re Kant, 21 Fla. L. Weekly Fed. B59 (Bankr. M.D. Fla. Apr. 12, 2006) ("[A] husband and wife may not have the unity of interest in a tax refund that is necessary for a tenancy by the entireties."); accord In re Ascuntar, 487 B.R. 319, 322-23 (Bankr. S.D. Fla. 2013) (reasoning that the debtor could not establish TBE ownership of the refund because there was no unity of interest and concluding that, unless the tax refund is received prepetition and deposited into a TBE account, the expected future income existing on the filing of the individual's bankruptcy petition is not owned as TBE with his or her spouse); In re Rice, 442 B.R. 140, 143-44 (Bankr. M.D. Fla. 2010). Contra In re Smith, 26 Fla. L. Weekly Fed. B111 (Bankr. M.D. Fla. Feb. 18, 2016) (finding Ascuntar's "holding inconsistent with the fact that there is a presumption in favor of ownership of a joint tax refund as TBE when owned by a married couple, as well as, the decision . . . in In re Sinnreich, 391 F.3d 1295 (11th Cir. 2004)" and "[i]nstead, . . . adopt[ing] the reasoning and holding . . . of In re Newcomb, 483 B.R. 554, 558 (Bankr. M.D. Fla. 2012) . . . find[ing] the refund is presumably held as TBE by the Debtors and the Trustee has failed to rebut this presumption").

As explained in Newcomb, however, the reasoning behind Morine and Kant and their progeny is questionable:

> If creditors other than the IRS were permitted to rely on the IRS's authority to allocate a portion of a joint tax refund to individual spouses as the basis for rebutting the tenancy by the entirety presumption, then a debtor could never establish a tenancy by the entirety in a joint tax refund. Whether a debtor contributed all (as in Kant and Morine), none, or a portion of the overpayment, the joint tax refund would always be subject to attack by any creditor of just one of the spouses, with the allocation based on 26 U.S.C. §

- 11 -

> 6402(a). Such a result runs contrary to the limitations imposed by Sinnreich and to the presumption of entirety property afforded by Beal Bank.

Newcomb, 483 B.R. at 558.

We agree. Under Florida law, the Gibsons were entitled to a rebuttable presumption that the tax refunds were TBE property. See Beal Bank, 780 So. 2d at 57 (recognizing that "strong[] policy considerations favor allowing [a] presumption in favor of a tenancy by the entireties when a married couple jointly owns personal property"). They demonstrated their intent to receive the refunds as TBE property by filing amended joint tax returns and receiving joint refund checks. Whether the refunds were related to Mr. Gibson's economic activity, alone, is irrelevant. See Newcomb, 483 B.R. at 558. They then deposited the checks into their joint bank account. In our view, their actions created the rebuttable presumption. See § 655.79(1), Fla. Stat. (2014); see also Beal Bank, 780 So. 2d at 58 ("[W]e hold that as between the debtor and a third-party creditor (other than the financial institution into which the deposits have been made), if the signature card of the account does not expressly disclaim the tenancy by the entireties form of ownership, a presumption arises that a bank account titled in the names of both spouses is held as a tenancy by the entireties as long as the account is established by husband and wife in accordance with the unities of possession, interest, title, and time and with right of survivorship."). Wells Fargo failed to rebut the presumption.

Wells Fargo urges us to hew to the decision in Hundley v. Marsh, 944 N.E.2d 127 (Mass. 2011). Wells Fargo's reliance on that case is misplaced. In Hundley, the United States Court of Appeals for the First Circuit certified to the Supreme Judicial Court of Massachusetts the question of how an income tax refund was to be

apportioned between a debtor in bankruptcy and his nondebtor wife with whom he had filed a joint tax return. Id. at 129. "Hundley dealt with the appropriate formula under state law for allocating the ownership of an income tax refund between spouses when the applicable state statute was silent on the issue." In re Provencal, 09-42728-MSH, 2011 WL 2470614, at *1 (Bankr. D. Mass. June 21, 2011).

Beal Bank is not silent, as was the status of Massachusetts law in Hundley. Thus, Wells Fargo's reliance upon Hundley underscores the trial court's error. Despite the TBE presumption established in Beal Bank, the trial court mistakenly allowed Wells Fargo, a creditor to only Mr. Gibson, to seek execution on TBE assets by claiming an authority reserved exclusively to the IRS. See Sinnreich, 391 F.3d at 1298. Hundley's analysis began with the observation that "[a]s a matter of Federal law, the right to a refund resulting from loss-carryback of prepetition losses constitutes property of the estate. Accordingly, any interest that the husband in this case may have in the joint refund is properly in the trustee's possession." 944 N.E.2d at 130 (citations omitted). Wells Fargo is not the IRS and lacks the IRS's special authority under the Internal Revenue Code. To allow otherwise would be to countenance the evisceration of the protections afforded TBE property discussed in Uttermohlen. Thus, Hundley is inapposite.

### Conclusion

We reverse the trial court's entry of summary judgment in favor of Wells Fargo and remand for further proceedings consistent with this opinion.

Reversed and remanded.


SILBERMAN and SALARIO, JJ., Concur.

- 13 -